Our next case for argument is Rosson v. Fitzgerald. Mr. McCarville Good morning. May it please the Court, I'm Rod McCarville, and I represent John Rosson, the appellant debtor in this matter. I'd like to reserve one minute for rebuttal. It's apparent to me that this case would have been resolved a long time ago, simply and easily, in favor of Mr. Rosson, but for the widespread and frequently repeated allegations that he's some sort of bad actor. In the bankruptcy court proceedings, Judge Glover referred to him as proceeding rebelliously. I don't know if you've had occasion to read the colloquy from that hearing that's in the record. But what does that have to do with the merits in this appeal? It occurred to me that I have been arguing this case legalistically, essentially saying that even if he were a bad actor, he should still prevail. I've come to believe that perhaps that was a strategic blunder. So I just wanted to put some of those issues to rest before I address the merits. If you would prefer that I not, that's fine. Well, he did not follow a court order that required him to deposit the money. Is that right? That's essentially true. But let's look at that order. First of all, the order was issued in the form of an oral ruling. It was never written. It was never entered on the docket at a hearing on a completely separate matter. It occurred at a time when Mr. Rawson was going through what, for lack of a better phrase we might call an ugly professional divorce from his attorney. So his attorney was expected to convey that oral ruling to his client when already we found that communications had broken down. And furthermore, I'm sorry. All along he kept saying he was going to get this big award out of the arbitration and that would cover his debts and make his plan feasible. So he kept saying he was going to use the money that way. Is that correct? He said it was his intent to use the money in regard to his Chapter 13 plan. Which brings me to the last point about the judge's order, which is that under Section 1306b, it's not clear to me that the judge had the authority to make that order in the first place. That provision says that possession of estate assets will remain with the debtor shall remain with the debtor except in cases of a confirmed plan or an order confirming a plan, which was not the case here. In any event the judge didn't have authority, the vacancy judge didn't have authority to direct him to turn over the money? I'm not going to rely in particular on that argument, but I do think that it's relevant to the question of whether or not he was attempting to defraud or act in bad faith, whether the Court's order was even lawfully supportable. Well, he violated the order, didn't he? He did violate the order to the extent that he invested a portion of those assets of those funds into an estate asset. You mean his home? His home. That's correct. Which, as I said in my brief, I don't dispute for a moment, was a very bad idea, was improper, was contrary to the bankruptcy rules and certainly would have exposed him to some sort of sanction. But whether that leads to the situation where his rights under other substantive laws, specifically 1307b and the notice provisions of 102a, where those were essentially whisked out from under him on the basis that he was attempting to defraud the Court. I think that that's an overreaction to what was admittedly a poor choice on his part. If I may, I'd like to move on to the section 1307b issue, because I think that that really should be dispositive. The language is very clear. The debtor shall be entitled to withdraw his petition unless the case. Has that proposition been called into question by the Supreme Court's recent decision? I don't think so. You're talking about the Marama case, and I think Marama is easily distinguishable. First of all, it's distinguishable on the basis of the petitioner's conduct. In that case, the petitioner's conduct was truly egregious. He had fraudulently transferred assets. He had knowingly misstated the value of his trust. He admitted on the record that he was hiding assets from his creditors. He had attempted to claim an improper homestead exemption. He failed to disclose an anticipated tax refund. Furthermore, it's distinguishable under the statute, because that case was based on section 706, which, first of all, doesn't use the commanding shall language, and secondly, ought to be read in connection with 706d, which says that he needed to be qualified to file under Chapter 13 in the first place in order to convert. And the Court said that because of the amount of his indebtedness, 109e prohibited that, and because of pre-petition bad faith conduct, he was not permitted to file as a Chapter 13 debtor. Here, there is no provision comparable to 706d, and in any event, I would argue that it would be irrelevant in any case. He's asking not to convert, but to dismiss, and there's no statutory restriction on what status a debtor must or must not have in order to dismiss. It just simply says that it had to occur before the case was converted. And I want to make clear, the appellee in their brief, in its brief, says that the case had already been converted, that the judge's oral ruling at the August 17th converting the case on the record extinguished his right to dismiss under 1307b. That's not what the cases have held. The opinion in Beatty v. Traub, which of course I understand is not binding on this Court, but which I believe is persuasive, says that, and it looks at the Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58, that the Court's order of conversion doesn't become effective until it's entered onto the docket. That may seem like a technicality, but I think this case is a good example of where substantive rights can actually hang on that rule. And so I think it's applicable in this case. Finally, and to me this was the most shocking part of the district court's opinion, his ruling that although the debtor was entitled to notice under Section 102, that and the concession on the district court's part, that there was essentially no notice. And I would argue that the Court's qualifier essentially was superfluous. There was, in fact, no notice. But under the circumstances, that was adequate. No notice was adequate notice. I find that shocking. And, you know, to be honest ---- Was it because he thought that the result would have been the same and there would have been nothing that the debtor could have done about it? I don't know if that's what he thought. I don't think the record was clear on that point. But in any event, I don't think that the Court is entitled to presume that the debtor would have been able to make no argument at a hearing. I think ---- Well, he didn't make an argument on the petition for rehearing. On a petition for rehearing, as the bankruptcy court pointed out when that petition was entered, those are seriously disfavored, and the burden is going to be strongly on the moving party to make the case. Well, that would be added reason why you should have made any argument that he had, but he didn't. I'm sorry. At what point? He didn't make any argument on the petition for rehearing. If he had an argument, had notice been given, he had the same argument at the time of the petition for rehearing, but he didn't make it. Do I make myself clear? I think that the argument was made in the petition on rehearing, particularly with respect to his right to dismiss under 1307B. I think ---- That was really the only argument he advanced, right? He just kept asserting that he had a right to dismiss. I believe that's correct, yes. Although, I don't know that the circumstances would have been the same if he had been in a position to make the argument going, you know, from the beginning. There was a sense of, on the one hand, some desperation, maybe, because he'd already been ruled against, and on the other hand, a sense that 1307B, in connection with Beatty v. Traub, which should have been, in my opinion, binding on the bankruptcy court, that that should have been dispositive. And again, that was an example, I suppose, of my strategic error in making a legalistic argument when a more holistic argument may have been more appropriate. If the Court has no further questions, I would reserve the remainder of my time. That's fine. Thank you. Your Honors. David Gabin, appearing on behalf of the Chapter 7 trustee in the bankruptcy case. Mr. Rosen filed a Chapter 13 bankruptcy petition with the bankruptcy court. He received the protections and the benefits of the bankruptcy code by doing so. He was allowed to stay in Chapter 13 for a full year and given an opportunity to perform his stated intention of paying the proceeds from an arbitration award into his plan. I gather Judge Overstreet had, or there had been some exchange between either his attorney or Mr. Rosen, and contemplating the money from the arbitration. But had Judge Overstreet set a deadline for depositing those funds into the bankruptcy court? Well, it was just a sort of general understanding that these funds would be available. There was a point in time when they actually did become available. In the record, there is a statement of arbitration proceeds that was filed by Mr. Rosen's counsel. I believe it was on July 1st of 2005. And essentially showing that there was an award issued with payment presumably forthcoming shortly. Had Overstreet entered an order saying those funds need to be deposited in the court by X date? This statement of arbitration proceeds was filed just five days before a hearing that was set before Judge Overstreet. That was held on July 6th of 2005. And that was a hearing not only on the Chapter 13 trustees. At the July 6th hearing, did Judge Overstreet enter an order saying file those, deposit those proceeds with the registry of the court? Issued a verbal ruling, an oral ruling. And the docket shows that there is a ruling in the minute history on the docket. It recites that there is a ruling to the effect that Mr. Rosen is instructed to surrender the arbitration proceeds to the Chapter 13 trustee. So there's no. By any date certain? The docket doesn't show that. But I believe at that point he still had not yet had the check in hand. Okay. I think the understanding of everyone. So then something happened. So then after that, apparently something happened between he and his counsel. Because then we know on August 17th, just prior to the 17th, there's a motion to relieve his counsel. Is that correct? That's six weeks after the July 6th hearing. And at that July 17th hearing, when the motion is brought on to relieve counsel, the question is raised about what happened to those funds. Is that right? That's right. There was a creditor who appeared at that hearing and, in fact, objected to the motion to withdraw by Mr. Rosen's counsel and advised the court that the funds had not been turned over, to his knowledge, to the trustee or the registry of the court, I believe he might have said. So then Judge, I forget his name. Judge Glover. Judge Glover said, okay, you've got one. You've got 55 minutes to get those funds to the trustee. And, of course, Judge Glover did. What notice is that? That's a pretty swift notice. It is, but. . . I don't know that any of us could meet that. I mean, how do you do that? Well, he had six weeks, of course. That was in August 17th. No, but right then he had, what, half an hour, 45 minutes? Well, and that's the type of issue, Your Honors, that I think Mr. Rosen's counsel, in a motion for reconsideration, could have said, you know, one hour wasn't enough. I had the money. It was tied up in an account. I needed two days or whatever, and explain his efforts to turn over those funds. And keep in mind that Judge Glover did ask. Mr. Rosen's counsel was present before the court at that hearing. And after he heard the accusation that the funds still had not been turned over, as the debtor was instructed by Judge Overstreet, he turned to Mr. Harris and said, Mr. Harris, do you have a reply? And Mr. Harris, at that point, of course, is still counsel of record for the debtor. He doesn't have any substantive explanation for why those funds have not been turned over. He simply says that's not an issue that pertains to my motion. Which is quite accurate. Right. So I think Mr. Rosen did have an opportunity to explain what's going on with these funds. He had an opportunity at that hearing, he had an opportunity after the court had issued a ruling to convert the case to come forward with new information. That's typically something you'd want to put into a motion for reconsideration. Are there new facts that the court wasn't apprised of? There's no new facts in this. You're understanding, you know, the district court, when the district court heard this on appeal, the district court said, well, you know, that motion that Harris filed later that afternoon was really not a proper motion because he had been relieved, essentially been relieved of his counsel that he talked about, although the district court talks about equitable considerations. Do you understand that he was, is it your position that the bankruptcy judge had relieved him his counsel? Well, yes. He said, I'm granting your motion to withdraw. But aren't there some precedents that even when counsel is withdrawing, he needs to do whatever he can to protect his client until new counsel comes in? And I think the district court addressed that by saying, you know, during the history of this case, Mr. Rosen on several occasions opposed motions to dismiss his case, saying just give me a chance to submit the arbitration proceeds. I'm about to get a final result in this case. And as soon as I do, that money is coming into my plan, consistently opposed dismissal. So here we have Mr. Harris coming in with a late hour notice of intent to dismiss after he's already received an adverse ruling and really after the court has. Well, you know, it's kind of odd. What happens is there's a motion to relieve his counsel of record. And at the same hearing, all of a sudden the bankruptcy judge says, ah, we need that money. We need it now within 45 minutes. And so the lawyer then says, well, wait a minute. I want to withdraw my motion because I need to talk to my client. I've got to figure out what's going on here. And the bankruptcy judge says, no, no, no, I'm not going to let you withdraw it. And then the judge says, you're going to want that money deposited. And then the judge says, further, you've got 50 ‑‑ Harris has got 55 minutes to get the money here, so suggesting that the lawyer better take steps to notify his client that that money needs to be deposited. I mean, what's going on? Is he counsel of record still or is he not counsel of record? Sounds like he's counsel of record to me because any, as Judge Fletcher said, any responsible lawyer would take steps to protect his client, do what he needs to do. And here he thought he could take care of this whole problem by simply filing a dismissal of the ‑‑ Well, on that precise point, the district court pointed out that Mr. Harris, who represented the communications, had broken down between him and his client and that the bankruptcy court properly exercised its discretion in disregarding the statement that he wanted to dismiss. Beyond that, Your Honor, there was cause, cause shown to the bankruptcy court not only for converting the case to Chapter 7 so that a trustee could take charge of these funds, but also to refuse to allow that motion to dismiss, to be granted, notwithstanding the expressed language of 1307B. And that instruction comes from the U.S. Supreme Court in Marama. Do you think it's pretty clear after the Supreme Court's decision in Marama that it's not an absolute right anymore? I don't see how that argument can be sustained at this point. Marama makes it clear that you have to look at the entire statute. In that case it was 706 and they said, well, we're not going to just look at 706B, which talks about the right to convert. We have to look at 706D, we have to look at the entire statute. Under 1307 you have 1307B, which talks about the right to dismiss. 1307C talks about the court may dismiss the case or convert the case for cause. The U.S. Supreme Court says there's nothing in 706, and by analogy nothing is 1307, that prevents the court from exercising its inherent power to prevent an abusive process. That power is set forth in Code Section 105A. And here there was an abuse of the process. Mr. Rosen was proceeding. He misrepresented his intentions to the court for a full year. He did so in his plan. He did so in a motion for relief from state. And the motion is significant because that's where he received the authority of the bankruptcy court to go into the arbitration proceeds, obtain a final ruling, and not have creditors attach those proceeds or take other action to collect on their debts. So he receives those benefits, and then at the 11th hour says, well, now that I have the money, I'm just going to walk away. Is the trustee still holding the $104,000? Yes, there are. He did receive those funds. There have been a couple of intervening orders in the case where minor disbursements have been made. So that full amount is not on hand at this time. So the bankruptcy proceeding is basically on hold. That's right. As of Chapter 7. That's right, pending the outcome of this issue. Okay. Thank you. Thank you. I appreciate your argument. Counsel, you've got a minute for rebuttal. Let me ask you a question. What exactly do you want this Court to do? I would ask this Court to remand the case to the Bankruptcy Court with a direction to permit the dismissal under Section 1307B that should have been granted on August 17th, 2005. So what happens to the money that the trustee is holding? The money, what's remaining, and there haven't been minor disbursements. There have been about $40,000 in disbursements. The money that's remaining would be used to satisfy the creditors who still remain and still have an interest in being paid. So it wouldn't make any difference if it were remanded because the trustee would still have the money and the authority to wind up. I would ask that Mr. Rossen have the authority to use that money to wind up because the trustee at that point, if the case has been dismissed, should have no further authority to do anything. Now, is there an adequate cause for an involuntary Chapter 7? Honestly, Your Honor, I'm not familiar enough with the procedures involved with involuntary Chapter 7 to know the answer to that question. I'm sorry. I suppose that there may be. I think that that would be incumbent upon the creditors to make that argument before the bankruptcy court. And in the meantime, you'd give the money back to Mr. Rossen who could then add another floor to his house? The house is no longer there. The house has been foreclosed on. Mr. Rossen is now living with his family. Would he be free to spend the money any way he wants to? I don't think so. Well, the creditors still have the right to pursue all of the legal remedies that they have against any debtor. Outside of bankruptcy. That's correct. What happened to the $81,000 that went into the house? It went into the house. And on Judge Overstreet's order, receipts for essentially all of that money, all but I think about $4,500, $4,600 was presented. And there's been no claim that those receipts were in the house. So when the house was foreclosed upon, did the estate get any money after all liens were paid on the house? My understanding is that he did not, but I won't represent that. $81,000 is gone. So the creditors get nothing. The creditors who got it were the creditors who had secured interest in the homes, of which I believe there were three. All right. Thank you. Our next case for argument is Bornikov v. Mukasey.
judges: Fletcher, Paez, Schwarzer